UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DANIELLE CAMPO,

                Plaintiff,

- against -

CITY OF NEW YORK, and JOHN RINGEL, and
JANICE HOLMES, and BRIAN FOLEY, and
PAUL MARECKI, and JON MERCADO, in their
official and individual capacities,

                Defendants.
------------------------------------------------------------X

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Danielle Campo, by and through her attorneys, LEEDS BROWN LAW, P.C., alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

**JURISDICTION AND VENUE**

1. This is a civil action based on the Defendants' violations of Plaintiff's rights as guaranteed to her by the Fourteenth Amendment of the United States Constitution, as enforced by 42 U.S.C. § 1983 ("Section 1983"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and any other cause of action which can be inferred from the facts set forth herein.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343. Supplemental jurisdiction is invoked over State causes of action pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein,

occurred in this district.

4. All conditions precedent to maintaining this action have been fulfilled. On October 16, 2018, a complaint was filed with the New York State Division of Human Rights, which was dual-filed with the EEOC. On May 2, 2019, the EEOC issued a right to sue letter. This action was properly instituted within 90 days of the receipt of said letter.

**PARTIES**

5. Plaintiff, Danielle Campo ("Danielle"), a female, was and remains a resident of the County of Nassau, State of New York. Campo is an employee of the New York Police Department ("NYPD").

6. Defendant, City of New York ("City"), was and still is a municipal corporation organized under the laws of the State of New York. The City operates and controls the NYPD. At all relevant times, the City meets the definition of an "employer" and a "covered entity" under all applicable statutes.

7. John Ringel ("Ringel") was, and still is, a Sergeant for the NYPD. As a Sergeant, Ringel has final authority to assign work responsibilities, bring disciplinary charges, transfer employees, and set policies. Accordingly, he is a supervisor under the applicable laws. Further, he is an employer under the applicable State Laws. Ringel was aware of and remained deliberately indifferent to the unlawful conduct as set forth herein.

8. Janice Holmes ("Holmes") was, and still is, an Inspector for the NYPD. As an Inspector, Holmes has final authority to assign work responsibilities, bring disciplinary charges, transfer employees, and set policies. Accordingly, she is a supervisor under the applicable laws. Further, she is an employer under the applicable State Laws. Holmes was aware of and remained deliberately indifferent to the unlawful conduct as set forth herein.

9. Brian Foley ("Foley") was, and still is, a Sergeant for the NYPD. As a Sergeant, Foley has final authority to assign work responsibilities, bring disciplinary charges, transfer employees, and set policies. Accordingly, he is a supervisor under the applicable laws. Further, he is an employer under the applicable State Laws. Foley was aware of and remained deliberately indifferent to the unlawful conduct as set forth herein.

10. Paul Marecki was, and still is, an Officer for the NYPD. Marecki, under color of state law, altered Plaintiff's terms, conditions and privileges of employment because of her gender, in violation of the Fourteenth Amendment of the United States Constitution (as enforced by 42 U.S.C. § 1983) by subjecting her to a gender based hostile work environment and sexual harassment.

11. Jon Mercado was, and still is, an Officer for the NYPD. Mercado, under color of state law, altered Plaintiff's terms, conditions and privileges of employment because of her gender, in violation of the Fourteenth Amendment of the United States Constitution (as enforced by 42 U.S.C. § 1983) by subjecting her to a gender based hostile work environment, sexual harassment and sexual assault.

### FACTS

**NYPD Employment**

12. Danielle began working for the NYPD as a police officer in January of 2009. Danielle was first assigned to the Queens South Impact office of the NYPD.

13. Danielle remained in the Queens South Impact office for approximately three years, with no incidents or issues with other officers or supervisors.

14. In 2012, Danielle was assigned to the 100th Precinct.

15. Throughout her employment, Danielle received exemplary performance reviews until she complained about the sexual harassment she endured.

16. As detailed below, Danielle has suffered years of pervasive sexual harassment and eventually sexual assault by her colleagues. Despite notifying her superiors of this discriminatory and unlawful conduct, the City Defendant failed to take any action to stop the harassment. Instead, Danielle was retaliated against for asserting her rights.

**Sexual Harassment by Employees of NYPD**

17. While in the 100th Precinct, Danielle became platonic acquaintances with fellow police officer Paul Marecki ("Marecki").

18. Marecki and the other male officers regularly made inappropriate sexual comments and refer to Danielle and the other female officers using offensive gender-based terms, such as "sluts" "whores" or "thunder cunts". This inappropriate conduct would happen on a near daily basis and made Danielle's work environment extremely uncomfortable and hostile.

19. Beginning in 2014 and continuing through September of 2018, Marecki repeatedly made advances to Danielle, to which Danielle would decline. Marecki would often follow-up with offensive sexually explicit comments, both in person and through harassing text messages.

20. Beginning in early 2015, the harassing text messages had become more frequent and alarming.

21. Danielle repeatedly requested that Marecki cease these inappropriate communications. Despite Danielle's objections, Marecki continued to send a multitude of explicit text messages, for hours at a time.

22. Although Danielle repeatedly and emphatically asked Marecki to stop communicating with her, even removing her phone number from his phone more than once, the harassment continued.

23. Marecki's harassing conduct and comments are too voluminous to individually itemize.

However, the following are examples of such explicit and inappropriate text messages:

a. September 20, 2014: "Would it be wrong to say I want you in my mouth? To make you cum?" When Danielle expressed shock at this text message, Marecki continued, "I would date you…I really think we could have a great cuddle."

b. September 25, 2014: Danielle explicitly requested that Marecki stop sending sexual and inappropriate text messages, as it made her "uncomfortable".

c. April 13, 2015: "Don't be a vagina hole…You expecting a rim job tonight?"

d. May 2015: "I'm sitting on my deck drunk, enjoying the breeze, when I talk about female cops, you are my favorite." Marecki further continued "I want to get drunk and stare into the sunset. And cry and talk to myself and make stupid decisions."

e. July 9, 2015: "I would do naughty things to you"

   i. Later that evening when Danielle asked him to stop, Marecki pretended someone had his phone, and texted: He [Marecki] has a nice cock and would treat you so well."

f. January 21, 2016: "You know I would lick…"

g. February 6, 2016: "I love your hair but imagine that beautiful mane getting pulled."

h. January 26, 2017: "I might drunk text you tonight, I apologize ahead of time, and not about eating your ass or whatever I send."

   i. Later that evening, Marecki texted: "You know I'm a foot freak, but your hair…reminds me of Kristy. Perfect Blond hair, perfect blonde."

(See Exhibit 1).

24. Marecki's harassment continued into 2017, forcing Danielle to block his cellphone number and block him from all social media accounts.

25. In 2017, Danielle and her coworkers held a meeting with Marecki regarding his perceived issues with alcohol abuse. After the meeting Marecki became even more hostile, publicly referring to Danielle as a "slut" "cunt" and "homewrecker".

5

**2016 and 2017 Complaints to NYPD and NYPD's Failure to Investigate and Take Action**

26. Although Danielle complained about Marecki numerous times to her supervisor, Sergeant Ringel, Ringel did not take any action to stop the harassment. Instead, Ringel repeatedly mocked Danielle and made jokes about Marecki's improper conduct.

27. One such complaint to Ringel about the disturbing text messages occurred on or about January 24, 2016, to which Ringel replied, in a joking manner, "it's like [the serial killer from] Silence of the Lambs."

28. On January 4, 2017, Danielle again raised Marecki's sexual harassment and text messages with Ringel, to which he merely responded, "oh man, he is creepy".

29. Another such complaint occurred on March 20, 2017, when Danielle told Ringel she was "legitimately scared" she would come home to find Marecki "in her yard with his gun out." Ringel laughed in response. In fact, on May 5, 2017, Ringel joked with Danielle that Marecki was "hiding in her backyard in trees."

30. Danielle also repeatedly complained to Sergeant Foley and her Union Representatives, Officer Jamie Angelastro and Officer Richard Collins, yet no action was taken to stop Marecki's harassing communications.

31. Marecki's abusive communications continued for years, despite Danielle's repeated complaints to management.

32. The NYPD repeatedly failed to stop Marecki's harassing conduct, despite being aware of it, and failed to adequately investigate Danielle's numerous complaints.

**Continued Sexual Harassment and Sexual Assault**

33. In March of 2017, Officer Jon Mercado ("Mercado") was assigned to work in the Neighborhood Coordination Officer ("NCO") unit with Danielle.

34. In or around August 2017, Mercado's behavior towards Danielle changed. Mercado and the other male police officers would constantly talk about sex and make derogatory comments about women.

35. In January 2018, Danielle was transferred out of the NCO program without any explanation.

36. In approximately January 2018, while driving in her car with Mercado, he forcefully grabbed Danielle's breasts several times. Danielle repeatedly asked Mercado to stop, but he became more aggressive, leaving bruises on both of her breasts.

37. Mercado's aggression only continued, as he grabbed her neck with his hand, and grabbed her hair, forcing her towards his penis, stating: "You're going to suck this or you're going to suck it."

38. Danielle repeatedly told him to stop and tried to push Mercado away. When Danielle finally pulled herself away, Mercado forcefully pulled a clump of hair out of her head and ripped her dress. Danielle was eventually able to push him out of her car and drove away.

39. After the attack, Danielle was extremely distraught. She was too scared and embarrassed to immediately tell anyone about the attack.

40. The trauma from the assault kept Danielle up at night, her hair started falling out in clumps, and her body became covered in a rash.

41. When Danielle visited her doctor, she was advised that these symptoms were due to stress. Her doctor inquired whether Danielle had recently been through trauma.

42. Danielle's doctor prescribed antidepressants, which she has been taking since the assault.

43. In March 2018 Danielle was placed back in the NCO program, and was advised that she could not be removed again without an explanation.

**2018 Complaints to NYPD and Retaliation**

44. In April 2018, Danielle complained to the Internal Affairs Bureau ("IAB") about Marecki's pervasive sexual harassment and Mercado's sexual assault.

45. Although Danielle had always received exemplary reviews, once she began complaining to management about sexual harassment and assault, she would receive offhand negative comments from her commanding officer, Inspector Janice Holmes, that she suddenly "was not doing a good job", she was "on thin ice", and that no one wanted to work with her.

46. Shortly thereafter, Danielle was again removed from the NCO program, allegedly because no other police officer wanted to work with her.

47. In retaliation for her numerous complaints, Danielle began receiving only undesirable assignments, such as transports of hospitalized prisoners.

48. On April 29, 2018, Danielle made a formal written complaint to Inspector Holmes, which specifically stated:

> I am willing to take any position that is assigned to me…I do however feel some sort of retaliation…My extensive, unfavorable interactions with Officer Marecki go back many years, as I have blocked from all forms of communication, due to his harassing messages exacerbated by his alcohol intoxication at the time. I have informed supervisor[s] in the past about the harassment I had been receiving and it was laughed at…I have been called a slut, whore, home wrecker and a coward by him…I feel like this has become a very hostile work environment and I know I should not have to be in fear of being sexually harassed or sexually assaulted by the men I work with.

(See Exhibit 2).

49. On May 10, 2018, Danielle formally complained to the Equal Employment Opportunity Division ("EEOD"), detailing the sexual harassment and sexual assault.

**Continued Harassment and Retaliation by Employees of NYPD**

50. Shortly after Danielle made her written complaint to Holmes, her locker was broken into, her belongings discarded on the floor, and her journal (which contained notes of the pervasive sexual harassment she has endured throughout her tenure) was stolen.

51. Officer Keith Richardson told Danielle she was wrong for reporting the unlawful conduct and, told her that other cops would not respond to her calls for help on the job, and they would let her "get her ass kicked."

52. In retaliation for her protected activities, Danielle was transferred to undesirable platoon shifts of 12:00 a.m. to 7:00 a.m. in approximately January 2018, and the 4:00 p.m. to midnight shift in May 2018.

53. On July 24, 2018, Danielle received a letter advising her that the EEOD investigation had been referred in its entirety to the IAB.

54. The IAB failed to take any action to stop the continued sexual harassment, and never filed a criminal report with the Nassau County Police Department ("NCPD") or Long Beach Police Departments ("LBPD") in relation to the sexual assault by Mercado.

55. On July 30, 2018, Danielle filed criminal sexual assault reports to both the NCPD and LBPD.

56. On October 16, 2018, Danielle filed a Charge of Discrimination with the New York State Division of Human Rights, alleging sexual harassment and retaliation relating to the aforementioned actions. The complaint was cross filed with the Equal Employment Opportunity Commission.

57. In December 2018 Danielle applied for a transfer to the Harbor Summer Detail Unit, with more favorable hours. When she did not receive an interview or a response she was advised that she was disqualified from applying to the position, and the application was never reviewed.

58. Despite Danielle's numerous complaints and attempts to avoid Marecki and Mercado, the gender-based and retaliatory abuse is still ongoing into 2019.

59. Marecki and Mercado still remain in the same Precinct as Danielle, and they still openly refer to her in gender-based offensive terms as "whore," "thunder cunt," "slut," and "bitch", "fat ass", etc., continuing to damage her reputation among other officers and making her work environment intolerable.

## **CLAIMS FOR RELIEF**

### **SECTION 1983**

60. Defendant Marecki, under color of state law, altered Plaintiff's terms, conditions and privileges of employment because of her gender, in violation of the Fourteenth Amendment of the United States Constitution (as enforced by 42 U.S.C. § 1983) by subjecting her to a gender based hostile work environment and sexual harassment.

61. Defendant Mercado, under color of state law, altered Plaintiff's terms, conditions and privileges of employment because of her gender, in violation of the Fourteenth Amendment of the United States Constitution (as enforced by 42 U.S.C. § 1983) by subjecting her to a gender based hostile work environment, sexual harassment, and sexual assault.

62. Defendants Ringel, Holmes, and Foley, under color of state law, altered Plaintiff's terms, conditions and privileges of employment due to her opposition to sexual harassment and/or by failing to remedy the unconstitutional conduct of which he was aware despite a duty to do so,

in violation of the Fourteenth Amendment of the United States Constitution (as enforced by 42 U.S.C. § 1983).

63. The City Defendant is subject to Monell liability because the City maintained a policy, practice or custom, whereby it committed, condoned, and/or remained deliberately indifferent to the aforementioned constitutional violations, which may be inferred in the following ways:

   a. Defendants' maintained a custom or practice of harassing and retaliating against Plaintiff. The unlawful practices were so persistent and widespread that they constitute actual and/or constructive acquiescence of policymakers.

   b. The City's high-level supervisors and/or persons responsible for preventing Constitutional violations took the unconstitutional actions and/or failed to properly investigate, prevent, remedy, or correct the unlawful conduct.

   c. Inadequate training/supervision was so likely to result in harassment that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

   d. Policymakers participated in and/or knew of and failed to correct the unlawful conduct.

### TITLE VII, NYSHRL, NYCHRL

64. As set forth above, Defendant City subjected Danielle to sexual harassment, a hostile work environment and retaliation in violation of Title VII, the NYSHRL, and the NYCHRL, on the basis of her gender, and her opposition to discriminatory practices.

65. Plaintiff's Title VII claims are only asserted against the City, not the Individual Defendants.

66. The Individual Defendants, aided, abetted, incited, compelled, coerced and/or condoned the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law § 296(6), NYSHRL and NYCHRL, by participating in and/or being aware of

such conduct and failing to remediate same.

**WHEREFORE**, Plaintiff demands judgment against Defendants, where applicable, for all compensatory, emotional, physical, and punitive damages, any lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Carle Place, New York
       July 29, 2019

                                              LEEDS BROWN LAW, P.C.

                                              *Attorneys for Plaintiff*
                                              One Old Country Road, Ste. 347
                                              Carle Place, New York 11514
                                              (516) 873-9550

                                                    /s/
                                              RICK OSTROVE
                                              SUZANNE LEEDS KLEIN